IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES BRIDGES and JANET §
BURTZLAFF - TRUSTEE, §
§
Plaintiffs, §
§ CIVIL ACTION NO. H-17-1429
v. §
§
THE BANK OF NEW YORK MELLON, §
§
Defendant. §

## MEMORANDUM OPINION AND ORDER

Plaintiffs, James Bridges and Janet Burtzlaff (collectively, "Plaintiffs"), sued defendant, The Bank of New York Mellon ("BONY" or "Defendant"), in the 189th Judicial District Court of Harris County, Texas.[1] Defendant BONY timely removed to this court.[2] Pending before the court is Defendant's Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint or, alternatively, Motion for Summary Judgment ("Defendant's Motion to Dismiss") (Docket Entry No. 18). For the reasons stated below, Defendant's Motion to Dismiss will be granted.

## I. Factual Allegations and Procedural Background[3]

On August 24, 2004, Plaintiff James Bridges and his wife Denise Bridges purchased a property located at 17007 Country

---

[1]See Plaintiffs' Original Petition, Application for Injunctive Relief, and Request for Disclosures, Exhibit 1 to Notice of Removal, Docket Entry No. 1-2.

[2]See Notice of Removal, Docket Entry No. 1.

[3]See Plaintiffs' First Amended Complaint ("Plaintiffs' Amended Complaint"), Docket Entry No. 9, pp. 1-8.

Bridge, Houston, TX 77095 ("the Property"). In connection with the purchase, Bridges executed a note in the amount of $146,650 and a deed of trust (collectively, the "Loan Documents"). Plaintiffs allege that JPMorgan Chase Bank, N.A., was listed as the original lender.[4] The Loan Documents were subsequently transferred to The Bank of New York Mellon, for which Specialized Loan Servicing, Inc. ("SLS") acted as the loan servicer. In 2015 Bridges experienced financial distress, and he began negotiating with SLS to modify the terms of his loan. Bridges was offered a loan modification, but the terms of the agreement were never finalized because Bridges was transferred to a new SLS representative. Over a period of two years, Bridges' file was transferred to a new SLS representative multiple times. Each transfer restarted the loan modification process and required Bridges to resubmit financial documents and a loan modification application. Around October of 2016 an SLS representative assured Bridges that BONY would take no action to foreclose on his Property while he was in loan modification status. The SLS representative stated that she would draft an agreement containing that assurance, but Bridges never received one.

On February 15, 2017, Bridges conveyed the Property to Janet Burtzlaff by Special Warranty Deed subject to BONY's mortgage.[5]

---

[4]Because the parties did not attach a copy of the deed of trust to any of their filings, the court reviewed it on the Harris County Clerk's website as a public record. In fact, First Franklin Financial Corp., subsidiary of National City Bank of Indiana Corporation, was listed as the original lender, but this has no effect on the merits of the case.

[5]See Special Warranty Deed, Exhibit 1 to Plaintiffs' Amended Complaint, Docket Entry No. 9-1, pp. 2-4.

BONY sent Bridges a Notice of Foreclosure Sale indicating the foreclosure sale would take place on March 7, 2017.[6] The document contains a time stamp indicating that it was filed with the Harris County Clerk on January 13, 2017. Bridges called SLS to request that BONY cancel the foreclosure sale in accordance with its promises, but BONY did not cancel the foreclosure. The state court issued a temporary restraining order to enjoin the foreclosure until March 29, 2017.[7] Plaintiffs allege that BONY intended to wrongfully sell their Property at a foreclosure sale in violation of the agreements between the parties, the Texas Property Code, and Federal Regulations. Plaintiffs bring causes of action for breach of contract, common law fraud, promissory estoppel, violation of the Real Estate Settlement Procedures Act ("RESPA")/Regulation X, and for failure to provide notice of default and notice of acceleration.

Defendant argues that all of Burtzlaff's claims should be dismissed for lack of standing because she was not a party to the original loan. Defendant argues that all of Bridges' claims should be dismissed for lack of standing because Bridges had no interest in the Property once he sold it to Burtzlaff, and therefore suffered no injury related to the foreclosure of the Property.[8]

---

[6]See Notice of Foreclosure Sale, Exhibit 2 to Plaintiffs' Amended Complaint, Docket Entry No. 9-2, p. 2.

[7]Order Granting Motion to Extend Temporary Restraining Order, Exhibit 5 to Notice of Removal, Docket Entry No. 1-6, p. 2.

[8]Defendant's Motion to Dismiss, Docket Entry No. 18, p. 19.

BONY also moves to dismiss for failure to state a claim for breach of contract, common-law fraud, promissory estoppel, and RESPA under Federal Rule of Civil Procedure 12(b)(6),[9] and argues that Plaintiffs' cause of action for "no notice of default/notice of acceleration" fails as a matter of law.[10] Plaintiffs respond that none of the claims are subject to dismissal under Rule 12(b)(6), but did not respond to Defendant's arguments for dismissal of Plaintiffs' claims for lack of standing under Rule 12(b)(1).[11] Although under Local Rule 7.4 the court may treat the arguments as unopposed by Plaintiffs,[12] the court will consider the merits of the arguments because "mere failure to respond to a motion is not sufficient to justify a dismissal with prejudice." Watson v. United States ex rel. Lerma, 285 F. App'x 140, 143 (5th Cir. 2008); but see Black v. North Panola School Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that the plaintiff's failure to defend a claim in responses to motions to dismiss or to otherwise pursue it beyond her complaint constituted abandonment of the claim).

---

[9]Id. at 20-30.

[10]Id. at 30.

[11]See Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint or, Alternatively, Motion for Summary Judgment with Incorporated Memorandum of Law ("Plaintiffs' Response"), Docket Entry No. 19, pp. 4-10.

[12]See Local Rules of the United States District Court for the Southern District of Texas, Rule 7.4 ("Failure to respond will be taken as a representation of no opposition.").

## II.  Standards of Review

Because Defendant did not submit any summary judgment evidence, the court will treat the motion as a Rule 12 motion instead of a Rule 56 motion.

### A.  Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998).  The court may make its subject-matter determination by looking at "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Barrett Computer Services, Inc. v. PDA, Inc., 884 F.2d 214, 220 (5th Cir. 1989) (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.), cert. denied, 102 S. Ct. 396 (1981)).

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Raines v. Byrd, 117 S. Ct. 2312, 2317 (1997)).  One element of the case-or-controversy requirement is that a plaintiff must establish,

on the basis of the complaint, standing to sue. <u>Raines</u>, 117 S. Ct. at 2317 (citing <u>Lujan v. Defenders of Wildlife</u>, 112 S. Ct. 2130, 2136-2137 (1992)). To have standing, "[a] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo</u>, 136 S. Ct. at 1547 (citing <u>Lujan</u>, 112 S. Ct. at 2136). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." <u>Spokeo</u>, 136 S. Ct. at 1547 (citing <u>Warth v. Seldin</u>, 95 S. Ct. 2197, 2215 (1975)). "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" <u>Spokeo</u>, 136 S. Ct. at 1547-48 (citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" <u>Id.</u> at 1548 (citing <u>Lujan</u>, 112 S. Ct. at 2130).

## B.  Failure to State a Claim Under Rule 12(b)(6)

Under the Federal Rules of Civil Procedure a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff's pleading must provide the grounds of his entitlement to

-6-

relief, and "a formulaic recitation of the elements of a cause of action will not do. . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007). "'[N]aked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." <u>Fernandez-Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir. 1993). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied</u> <u>sub</u> <u>nom.</u> <u>Cloud v. United States</u>, 122 S. Ct. 2665 (2002). To defeat a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S. Ct. at 1974. The court does not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." <u>Southland Securities Corp. v. INSpire Ins. Solutions, Inc.</u>, 365 F.3d 353, 361 (5th Cir.

2004) (internal quotation marks and citations omitted). "[C]ourts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." Flynn v. State Farm Fire and Casualty Insurance Co. (Texas), 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing Neitzke v. Williams, 109 S. Ct. 1827, 1832 (1989)).

## C. Fraud Claims Under Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard on fraud claims. See United States ex rel. Williams v. Bell Helicopter Textron Inc., 417 F.3d 450, 453 (5th Cir. 2005). This means that a party must state with particularity circumstances alleged to constitute fraud. See Campbell v. Bravo Credit, Civil Action No. H-14-2794, 2015 WL 502234, at *5-*6 (S.D. Tex. Feb. 5, 2015). "This Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 207 (5th Cir. 2009) (internal quotation marks and citations omitted). "Rule 9(b) requires that plaintiffs plead enough facts to illustrate 'the "who, what, when, where, and how" of the alleged fraud.'" Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006) (citing Bell Helicopter, 417 F.3d at 453). A principal may be held liable for the fraudulent

misrepresentations of its agent "'so long as the third person reasonably believed the agent was acting within the scope of his authority.'" <u>NationsBank, N.A. v. Dilling</u>, 922 S.W.2d 950, 953 (Tex. 1996) (citing <u>Bankers Life Ins. Co. of Neb. v. Scurlock Oil Co.</u>, 447 F.2d 997, 1004 n.12 (5th Cir. 1971)); <u>see also Bohnsack v. Varco, L.P.</u>, 668 F.3d 262, 272-73 (5th Cir. 2012).

## III.  **Analysis**

### A.  **Breach of Contract Claim**

Plaintiffs argue that:

The actions committed by [BONY] constitute breach of contract because:

A.   There exists a valid, enforceable contract between Bridges and BONY;

B.   Bridges has standing to sue for breach of contract;

C.   Bridges performed, tendered performance, or was excused from performing his contractual obligations;

D.   BONY breached the contract; and

E.   The breach of contract by BONY caused Bridges' injury.[13]

Plaintiffs' Amended Complaint does not explain, however, which "actions" they are referring to that formed the basis of their breach of contract claim. In Plaintiffs' Response they explain that

. . . Plaintiffs' claim for breach of contract is not based on the mortgage loan agreement . . . it is a totally separate agreement wherein Plaintiffs agreed to

---

[13]Plaintiffs' Amended Complaint, Docket Entry No. 9, p. 4 ¶ 15.

put forth the time and effort to prepare and submit a
loan modification application . . . and continue to exert
the time and effort necessary in order to comply with
Defendant's requests for further information (a positive
act) in exchange for Defendant declining to take certain
action (a negative act). This constitutes a separate
stand-alone agreement in which there was a meeting of the
minds and for which consideration was given.[14]

### 1.    Whether Plaintiffs Have Standing

Defendant argues that Burtzlaff does not have standing because
she "was never in privity with BONY, nor was she a third-party
beneficiary of the Loan Agreements."[15]    Defendant argues that
therefore Burtzlaff "cannot show that she suffered an injury in
fact from any alleged breach of the Loan Agreements, nor can she
show that a decision from this Court in her favor would redress any
alleged injuries."[16]

Plaintiffs do not allege facts demonstrating Burtzlaff's
standing to sue. Spokeo, 136 S. Ct. at 1547. Even if they had, in
Texas "[a] party must establish its privity to the contract or its
status as a third-party beneficiary in order to sue for breach of
contract." City of Dallas v. Delta Air Lines, Inc., 847 F.3d 279,
28 (5th Cir. 2017) (citing Maddox v. Vantage Energy, LLC, 361
S.W.3d 752, 756-57 (Tex. App.--Fort Worth 2012, pet. denied).
Burtzlaff is not in privity of contract with BONY because she was

---

[14]Plaintiffs' Response, Docket Entry No. 19, p. 4.

[15]Defendant's Motion to Dismiss, Docket Entry No. 18, p. 16

[16]Id. at 16-17.

not a party to the Loan Documents or to the promise not to foreclose. Plaintiffs must therefore establish Burtzlaff's status as a third-party beneficiary. "A third party may enforce a contract it did not sign when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party." Tawes v. Barnes, 340 S.W.3d 419, 425 (Tex. 2011) (citation omitted). "When the contract confers only an indirect, incidental benefit, a third party cannot enforce the contract." Id.

The alleged promise not to foreclose was only made to Bridges, without any intent to benefit Burtzlaff. Without "a clear and unequivocal expression of the contracting parties' intent to directly benefit" Burtzlaff, the court will not confer third-party beneficiary status to her. Id. Because she is not a party to a contract nor a third-party beneficiary, Burtzlaff lacks standing to sue BONY for breach of contract; and her claim will be dismissed. Unlike Burtzlaff, Bridges has standing to sue BONY for breach of contract because he was a party to the loan and to the promise the SLS representative allegedly made.

## 2. Whether Plaintiffs Have Stated a Claim

In Texas, to state a claim for breach of contract plaintiffs must allege "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."

-11-

*Sport Supply Group, Inc. v. Columbia Casualty Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (citations omitted). Defendant argues that Plaintiffs failed to state a claim for breach of contract because:

> (1) by law Plaintiffs were never entitled to a loan modification; (2) Bridges had admittedly committed a prior breach; and (3) Plaintiffs have failed to allege any facts that would support a claim that BONY breached the Loan Agreements—the only legally enforceable contracts between BONY and Plaintiffs.[17]

Defendant also argues that

> to the extent Plaintiffs' breach of contract claim is premised on an alleged contract arising out of the alleged promise to forbear from foreclosing until the loan modification process was completed, the flaw in Plaintiffs' theory is that it assumes Plaintiffs had the right to a loan modification. Quite to the contrary, Plaintiffs had no such right.[18]

Even if Defendant is correct that "a loan modification is not a right," that argument does not address Plaintiffs' breach of contract claim based on an agreement not to foreclose.

The court has carefully reviewed the record and nowhere have Plaintiffs or Defendant contended that a foreclosure occurred. To the contrary, Plaintiffs admitted that they are still in the house.[19] Because none of the documents show that a foreclosure occurred, Plaintiffs have not stated a claim for breach of a

---

[17]*Id.* at 20.

[18]*Id.* at 21.

[19]*See* Transcript of Initial Conference, June 16, 2017, Docket Entry No. 15, p. 3, ll. 1-2 ("Court: Are the plaintiffs still in the home? [Plaintiffs' attorney]: That is correct, Your Honor.").

promise not to foreclose. Even if the court liberally construes Plaintiffs' claim as a "breach of a promise not to take any action to foreclose," and the court assumes that Defendant's posting of the Notice of Foreclosure Sale constitutes a breach, Plaintiffs allege no damages resulting from that breach.[20]  Therefore, Plaintiffs have failed to state a claim for breach of contract upon which relief may be granted.

## B.  Common-Law Fraud Claim

Plaintiffs allege that "[t]he actions committed by [BONY] [by and through their agent [SLS]] constitute common law fraud because SLS made false and material representations to Bridges when informing Bridges that BONY would take no action to foreclose on his Property while in loan modification status."[21]  Plaintiffs argue that

> SLS knew that the representations were false or made these representations recklessly, as a positive assertion, and without knowledge of its truth. In addition, SLS made these representations with the intent that Bridges act on them and Bridges relied on these representations which caused Bridges' injury.[22]

### 1.  Whether Plaintiffs Have Standing

Defendant argues that "[t]his supposed representation was made only to Bridges and is directly tied to the alleged modification of

_____

[20]Although Plaintiffs' breach of contract claim is clearly barred by the statute of frauds, Defendant does not make this argument as to the breach of contract claim.

[21]Plaintiffs' Amended Complaint, Docket Entry No. 9, p. 4 ¶ 17.

[22]Id.

-13-

the Loan Agreements to which Burtzlaff is not a party."[23] Plaintiffs' allegations do not mention Burtzlaff, specify how she was injured by the alleged fraud or misrepresentation, or show that this court could redress her injuries. Burtzlaff therefore has no standing to assert a claim for common-law fraud.

### 2. Whether Plaintiffs Have Stated a Claim

Plaintiffs' conclusory allegations fail to specify the statements, state when and where they were made, or explain why the statements were fraudulent. Flaherty, 565 F.3d at 207. Plaintiffs provide the court with the general facts surrounding the alleged misrepresentations, but do not provide specific facts to meet the heightened pleading standard under Rule 9(b).

Defendant argues that even if Plaintiffs adequately pled the common-law fraud claim, the claim should be dismissed because it is barred by the statute of frauds and the economic loss rule.[24] Plaintiffs do not respond to these arguments.

Texas courts apply the economic loss doctrine, which precludes recovery under tort law when the plaintiff's economic loss is based on contract law alone. Arlington Home, Inc. v. Peak Environmental Consultants, Inc., 361 S.W.3d 773, 779 (Tex. App.--Houston [14th Dist.] 2012, pet. denied). "[A] fraud claim sounds in contract alone when the only injury alleged is contractual economic loss."

---

[23]Defendant's Motion to Dismiss, Docket entry No. 18, p. 17.

[24]Id. at 24-27.

Metropolitan Life Insurance Co. v. Haden & Co., 158 F.3d 584, *6
(5th Cir. 1998) (citing Leach v. Conoco, Inc., 892 S.W.2d 954, 960
(Tex. App.--Houston [1st Dist.] 1995, writ dism'd w.o.j.)). "'When
a plaintiff, in his claim asserting fraud, attempts to rely upon an
allegedly fraudulent oral promise,'" the statute of frauds is a
defense to his fraud claim. Cooper v. U.S. Bank, National
Association, Civil Action No. 12-3190, 2014 WL 12531345, at *4
(S.D. Tex. Jan. 24, 2014) (quoting Leach, 892 S.W.2d at 960).

BONY's alleged oral promise not to foreclose while it
considered modifying Bridges' loan is barred by the statute of
frauds because the promise would modify the underlying mortgage
agreement's foreclosure terms, and the mortgage exceeded $50,000.
See Tex. Bus. & Com. Code § 26.02; Stolts v. Wells Fargo Bank, NA,
31 F. Supp. 3d 876, 881 n.3 (S.D. Tex. Jan. 16, 2014)
("Modifications to mortgages exceeding $50,000 are subject to the
statute of frauds."). Because Plaintiffs' Amended Complaint does
not meet the heightened pleading requirements of Rule 9(b) and the
claim is barred by the economic loss doctrine and the statute of
frauds, Plaintiffs' common-law fraud claim will be dismissed.

## C.    Promissory Estoppel Claim

Plaintiffs allege that "BONY made a promise to Bridges;
Bridges reasonably and substantially relied on the promise to his
detriment; Bridges' reliance was foreseeable by BONY; and Injustice
can be avoided only by enforcing BONY's promise."[25]

---

[25]Plaintiffs' Amended Complaint, Docket Entry No. 9, p. 5 ¶ 19.

1.  <u>Whether Plaintiffs Have Standing</u>

Defendant argues that

> Similar to the breach of contract and common-law fraud
> claims discussed above, because Burtzlaff never
> communicated with Defendant or SLS, Burtzlaff cannot show
> that she suffered an injury in fact from reliance on an
> alleged promise to modify the Loan Agreements, nor can
> she show that a decision from this Court in her favor
> would redress any alleged injuries.[26]

The court agrees. Plaintiffs do not meet the standard to establish
Burtzlaff's standing because they do not mention her in their
allegations, state that she relied on any of Defendant's promises,
or specify how she was injured by the alleged reliance.

2.  <u>Whether Plaintiffs Have Stated a Claim</u>

Under Texas law "'[t]he requisites of promissory estoppel are:
(1) a promise, (2) foreseeability of reliance thereon by the
promisor, and (3) substantial reliance by the promisee to his
detriment.'" <u>Addicks Services, Inc. v. GGP-Bridgeland, LP</u>, 596
F.3d 286, 300 (5th Cir. 2010) (citing <u>English v. Fischer</u>, 660
S.W.2d 521, 524 (Tex. 1983)). "Promissory estoppel claims premised
on promises to negotiate fail as a matter of law because they are
not sufficiently definite." <u>Stolts</u>, 31 F. Supp. 3d at 881 n.4
(citing <u>Addicks Services, Inc.</u>, 596 F.3d at 300; and <u>Gillum v.</u>
<u>Republic Health Corp.</u>, 778 S.W.2d 558, 570 (Tex. App.--Dallas 1989,
no writ)).

---

[26]Defendant's Motion to Dismiss, Docket Entry No. 18, p. 17.

Promissory estoppel can bar the application of the statute of frauds to allow the enforcement of an otherwise unenforceable oral agreement. Stolts, 31 F. Supp. at 881 (citing Exxon Corp. v. Breezevale Ltd., 82 S.W.3d 429, 438 (Tex. App.--Dallas 2002, pet. denied)). To meet the promissory estoppel exception to the statute of frauds under Texas law the promisor must "agree to sign a document that had already been prepared or 'whose wording had been agreed upon' that would satisfy the statute of frauds." 1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital, 192 S.W.3d 20, 29 (Tex. App.--Houston [14th Dist.] 2005, pet. denied) (quoting Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 769 (5th Cir. 1988). "A mere promise to prepare a written contract is not sufficient." 1001 McKinney Ltd., 192 S.W.3d at 29.

Plaintiffs' conclusory allegations fail to state which promise Plaintiffs allegedly relied on or how they suffered an injury from it. Plaintiffs state in their Response that

> the focus needs to be placed on the agreement between the
> parties whereby Defendant declined to take certain action
> (a negative act) if Plaintiffs put forth the time and
> effort to prepare and submit a short sale application,
> along with the supporting documents, and continue to
> exert the time and effort necessary in order to comply
> with Defendant's requests for further information (a
> positive act).[27]

Even if the court could look beyond Plaintiffs' Amended Complaint to decide whether Plaintiffs stated a claim, Plaintiffs' Response

---

[27]Plaintiffs' Response, Docket Entry No. 19, p. 7.

does not cure the deficiencies of Plaintiffs' Amended Complaint. Therefore, Plaintiffs failed to state a claim for promissory estoppel.

Assuming <u>arguendo</u> that Plaintiffs did properly state a claim, it fails for a number of other reasons. To the extent Plaintiffs' promissory estoppel claim is based on any promise to complete the loan modification process, the claim fails as a matter of law. <u>Stolts</u>, 31 F. Supp. 3d at 881 n.4 (reasoning that because Texas law requires that the promise is not vague and indefinite, a promise that the plaintiff's loan modification was "under consideration" is too indefinite to sustain a promissory estoppel claim). Such a claim fails also because the promise to modify the loan is not in writing. <u>1001 McKinney Ltd.</u>, 192 S.W.3d at 29.

Plaintiffs' factual allegations state "the SLS representative stated that she was memorializing the conversation by contemporaneously drafting an agreement to that effect which would be signed by her supervisor and mailed to Bridges . . . ."[28] Here, Defendant had merely promised to prepare an agreement. Because Plaintiffs do not allege that a written agreement had been prepared or that the parties had agreed on the wording, the promissory estoppel claim will be dismissed. <u>See 1001 McKinney Ltd.</u>, 192 S.W.3d at 29.

---

[28]Plaintiffs' Amended Complaint, Docket Entry No. 9, p. 2 ¶ 9.

**D. RESPA Claim**

Plaintiffs allege that Defendant violated Section 1024.41 of the Real Estate Settlement Procedures Act.[29]  Specifically, Plaintiffs allege that the actions committed by BONY constitute violations of RESPA because:

    A.    Bridges was working with BONY pursuing loss mitigation options;

    B.    BONY did not exercise reasonable diligence in obtaining all documents needed to complete Bridges's [sic] loss mitigation application;

    C.    Bridges submitted a complete loss mitigation application prior to BONY's first notice of filing;

    D.    Alternatively, Bridges submitted a complete loss mitigation application more that [sic] 37 days prior to the foreclosure sale;

    E.    BONY did not notify Bridges within 5 days after submission of missing documents that his application was incomplete;

    F.    BONY completed the violation by posting Bridges' Property for foreclosure sale on March 7, 2017.[30]

**1.   <u>Whether Plaintiffs Have Standing</u>**

Defendant argues that Burtzlaff lacks standing to assert a RESPA claim because she is a non-borrower.[31]  At least one court held that "the protections of RESPA apply only to borrowers and/or loan applicants." <u>Smith v. JPMorgan Chase Bank, N.A.</u>, Civil Action

---

[29]<u>Id.</u> at 5-6 ¶¶ 20-23.

[30]<u>Id.</u> at 6 ¶ 23.

[31]Defendant's Motion to Dismiss, Docket Entry No. 18, p. 18.

-19-

No. 4:15-00682-ALM, 2016 LEXIS 127350, at *30 (E.D. Tex. Aug. 11, 2016) (Magistrate Judge's report recommending dismissal for lack of standing adopted by Smith v. JPMorgan Chase Bank, N.A., Civil Action No. 4:15-682, 2016 WL 4974899, at *7 (E.D. Tex. Sept. 19, 2016)).  Because Burtzlaff is a non-borrower, she lacks standing to sue.  Moreover, Plaintiffs have failed to allege any other facts that would support Burtzlaff's standing to bring a RESPA claim.

   2.   Whether Plaintiffs Have Stated a Claim

   Upon submission of a loss mitigation application, RESPA requires a loan servicer to "[n]otify the borrower in writing within 5 days . . . after receiving the loss mitigation application . . . that the servicer has determined that the loss mitigation application is either complete or incomplete."   12 C.F.R. § 1024.41(b)(2)(B).   Additionally, RESPA contains various prohibitions on foreclosure referrals if the borrower submits a complete loss mitigation application.  12 C.F.R. § 1024.41(f)(2). "To recover, a claimant must show that actual damages resulted from a RESPA violation."  Whittier v. Ocwen Loan Servicing, L.L.C., 594 F. App'x 833, 836 (5th Cir. 2014); see also Solis v. U.S. Bank, N.A., Civil Action No. H-16-00661, 2017 LEXIS 211711, at *10 n.10 (S.D. Tex. June 23, 2017) (granting the defendant's motion to dismiss the RESPA claim under § 1024.41 because, inter alia, the plaintiffs "fail to establish a nexus between any of [the defendant's] alleged RESPA violations and the damages suffered as a result").

Plaintiffs' general assertions that Bridges submitted a complete loss mitigation application and that BONY "did not notify Bridges within 5 days after submission of missing documents" are not sufficient to plausibly plead a violation of RESPA. Moreover, Plaintiffs failed to plead any actual damages resulting from the alleged noncompliance with § 1024.41 as required. The court will therefore dismiss Plaintiffs' RESPA claim.

**E.  "No Notice of Default/Notice of Acceleration" Claim**

Plaintiffs allege that they "did not receive proper notice of default or notice of acceleration in order for Defendant to be able to foreclose on their lien."[32]

1.  <u>Whether Plaintiffs Have Standing</u>

Defendant argues that Bridges does not have standing to bring this claim because he had no interest in the Property when BONY sent the notice, and that Burtzlaff does not have standing because she is neither a borrower nor a debtor and "makes no claim that she is liable for Bridges' admitted default as the borrower on the underlying mortgage."[33]

"The issue of identifying who properly has standing to contest a foreclosure sale in Texas is well settled." <u>Goswami v. Metropolitan Savings and Loan Ass'n</u>, 751 S.W.2d 487, 489 (Tex. 1988). "As a general rule, only the mortgagor or a party who is in

---

[32]Plaintiffs' Amended Complaint, Docket Entry No. 9, p. 7 ¶ 26.

[33]Defendant's Motion to Dismiss, Docket Entry No. 18, p. 19.

privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust." Id. (citations omitted). "However, when the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale." Id.

Because Bridges is the mortgagor and Burtzlaff has a property interest in the Property through a special warranty deed, both have standing to challenge the foreclosure. See Reeves v. Wells Fargo Home Mortgage, 544 F. App'x 564, 568 (5th Cir. 2013) (finding that a plaintiff who acquired a property interest through a recorded quit-claim deed and made payments on the note had an interest in the property "sufficient to challenge the validity of Defendants' authority to foreclose").

2. <u>Whether Plaintiffs Have Stated a Claim</u>

Plaintiffs argue that BONY "was about to wrongfully sell their Property at a foreclosure sale on March 7, 2017 . . . without proper and timely notice as required by the Texas Property Code . . . ."[34] Defendant argues that receipt of notice is not a requirement under Texas law for a loan to be validly accelerated and for a foreclosure to be proper and that "Plaintiffs have not made (nor can they) an allegation that Defendant failed to send

---

[34]Plaintiffs' Amended Complaint, Docket Entry No. 9, p. 3 ¶ 13.

proper notice to them as required by TEX. PROP. CODE § 51.002(e)."[35] Plaintiffs respond that "it is an undisputed fact that Plaintiffs never received the notices required by the Texas Property Code and it is unproven whether Defendant actually sent the required notices" and explain that they have served discovery on Defendant to further prove this claim.[36] Defendant reiterates in its Reply that "Plaintiffs admit they have not and cannot plead BONY did not sent [sic] the proper foreclosure notices."[37]

The Texas Property Code § 51.002 provides rules for a sale of real property under a contract lien. Tex. Prop. Code § 51.002(b), (d). It requires the mortgage servicer of the debt to provide notice of the sale at least twenty-one days before the date of the sale by:

> (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;
>
> (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and
>
> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

---

[35]Defendant's Motion to Dismiss, Docket Entry No. 18, p. 30.

[36]Plaintiffs' Response, Docket Entry No. 19, p. 10.

[37]Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint or, Alternatively, Motion for Summary Judgment, Docket Entry No. 20, p. 6.

Tex. Prop. Code § 51.002(b). Section 51.002(d) states that the mortgage servicer must serve the "debtor in default . . . with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." Tex. Prop. Code § 51.002(d). "'There is no legal requirement that personal notice of a foreclosure be sent to persons not parties to the deed of trust.'" Rodriguez v. Ocwen Loan Servicing, LLC, 306 F. App'x 854, 856 (5th Cir. 2009) (quoting Stanley v. CitiFinancial Mortgage Co., 121 S.W.3d 811, 817 (Tex. App.--Beaumont 2003, pet. denied)). A purported purchaser of the mortgagor's deed is not a "debtor" within the meaning of the Texas Property Code § 51.002. Id.

The Texas Property Code § 51.002 does not provide an independent private cause of action. See Rucker v. Bank of America, N.A., 806 F.3d 828, 830 n.2 (5th Cir. 2015) ("Although the Texas Supreme Court has not decided this issue, the federal district courts that have addressed it seem to conclude that Section 51.002(d) does not intend an independent private cause of action."); Ashton v. BAC Home Loans Servicing, L.P., Civil Action No. 4:13-810, 2013 WL 3807756 at *4 (S.D. Tex. July 19, 2013) ("This Court has not found any cases that interpret section 51.002 to establish an independent right of action for damages."). Thus,

Plaintiffs' claim under § 51.002 will be dismissed because it fails as a matter of law.

However, "federal courts have construed claims under section 51.002 to be wrongful foreclosure claims." Ashton, 2013 WL 3807756 at *4. To bring a wrongful foreclosure claim, a plaintiff must show "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the two." Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 256 (5th Cir. 2013) (citing Charter National Bank—Houston v. Stevens, 781 S.W.2d 368, 371 (Tex. App.--Houston [14th Dist.] 1989, writ denied)). "[A] low foreclosure sale price does not amount to wrongful foreclosure; the plaintiff must allege that other irregularities in the foreclosure proceedings caused or contributed to a grossly inadequate price." Rodriguez at 856 (citing Powell v. Stacy, 117 S.W.3d 70, 75 (Tex. App.--Fort Worth 2003, no pet.).

Although Plaintiffs allege inartfully that Defendant failed to provide the proper notices, Plaintiffs never allege that there has been a foreclosure. Plaintiffs' Amended Complaint was filed on August 31, 2017, long after the March 7, 2017, date on which the alleged foreclosure sale was to have been held. Plaintiffs have therefore failed to allege wrongful foreclosure as a matter of law because they have not alleged foreclosure. The court will therefore dismiss this claim.

## IV. Conclusions and Order

For the reasons discussed above, in their Amended Complaint (Docket Entry No. 9) Plaintiffs have failed to state a claim upon which relief can be granted. Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint or, Alternatively, Motion for Summary Judgment (Docket Entry No. 18) is therefore **GRANTED**, and this action will be dismissed with prejudice.

**SIGNED** at Houston, Texas, on this 12th day of February, 2018.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE